IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ALANA COVEY                                                                                                PLAINTIFF

v.                                            Case No. 6:20-cv-06141

NATIONAL PARK COLLEGE                                                                       DEFENDANT

**MEMORANDUM OPINION**

Before the Court is Defendant National Park College's Motion for Summary Judgment (ECF No. 21). This matter has been briefed and is ready for consideration. (ECF Nos. 22, 23, 24, 25, 26).

**I.      Background**

On November 24, 2020, Plaintiff Alana Covey filed her complaint against Defendant. (ECF No. 2). "Plaintiff brings this action under the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e–2-3 ("Title VII"), and the Arkansas Civil Rights Act, Ark. Code Ann. §§ 16-123-101, et seq. ("ACRA"), for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, costs, including a reasonable attorney's fee as a result of Defendant's failure to pay Plaintiff, a female, the same as similarly situated male employees, and for wrongful termination for firing Plaintiff after she complained of gender discrimination."[1] (*Id.* ¶ 2). On December 28, 2020, Defendant filed an answer and denied the allegations in Plaintiff's complaint. (ECF No. 7).

In 2015, Defendant hired Plaintiff as a software support analyst. (ECF No. 23 ¶ 2). During the course of hiring Plaintiff, Defendant sought and received permission from the Arkansas Department of Finance and Administration to pay her a special entry rate as an Exceptionally Well-Qualified Applicant. (*Id.* ¶ 3). This allowed Defendant to pay Plaintiff $42,000 per year, an amount exceeding the entry pay

---

[1] Plaintiff's complaint does not state a claim that she was terminated in retaliation for complaints about pay discrimination based on sex in violation of the EPA.

1

level for her position. (*Id.* ¶ 4). In 2018, Defendant had a Quality Pay Program process with three different components: QPI focused on guidelines for salary increases based on performance; QPII focused on pay equity among employees within classifications; and QPIII focused on guidelines for reclassification of employees based on an analysis of job duties. (*Id.* ¶ 5).

In March 2018, Plaintiff began requesting pay raises. At that time, Plaintiff's salary was $44,319.12 per year. (Covey Dep. 98:1 – 99:2, ECF No. 24-1 at 99–100). On October 23, 2018, Plaintiff filled out a QPIII form and sent it to her supervisor for signing. (ECF No. 24-2). Plaintiff requested her position be reclassified and her salary raised to align with the job duties she had been performing for several months. Plaintiff included language in her QPIII form referencing pay inequality and the EPA. Her supervisor did not complete this version of the QPIII form. After being told by the Defendant's then-Associate Vice President of Human Resources, Janet Brewer, that Defendant had concerns about the language Plaintiff used, Plaintiff removed this reference and resubmitted the QPIII form to her supervisor for signature on October 30, 2018. (Covey Dep. 61:17 – 62:25, ECF No. 24-1 at 61–62).

Plaintiff was then reclassified from software support analyst to a project/program manager on December 1, 2018, and received a corresponding salary increase consistent with the Higher Education Uniform Classification and Compensation Act (Act 496). (ECF No. 23 ¶ 7). However, her new salary of $52,944 per year did not become effective until July 1, 2019. (*Id.* ¶ 11).

During her employment with Defendant, Plaintiff worked with two other "project/program managers", both of whom are male.[2] (*Id.* ¶ 8). Both male employees, Stephen Carroll and Miles Morton, were not terminated.

At the time of Plaintiff's termination, Carroll's title was PeopleSoft Analyst. Carroll began work for Defendant in December 2010. (ECF No. 26-1 ¶ 5). He was responsible for management of the PeopleSoft ("PS") lift and shift project, PS administration/support, ImageNow document imaging administration, PS training coordination/facilitation, custom query/report writing, Insider Intranet

---

[2] Plaintiff, Stephen Carroll and Miles Morton were all designated as "project/program managers" for budgeting purposes.

Application administration, technical liaison for the Institutional Reporting team, and functional analysis/support. (ECF No. 23 ¶ 14). Carroll has a B.S. and an M.S. in Computer Science. (ECF No. 23 ¶ 10). On July 1, 2019, Carroll's pay was $53,832 per year. (ECF No. 26-1 ¶ 5.f).

At the time of Plaintiff's termination, Morton's title was Program Manager Data Services. Morton began work for Defendant in August 2007. (ECF No. 26-1 ¶ 4). Morton was responsible for PS technical support, PS lift and shift technical management, security administration, database administration, custom query/report writing, and functional analysis/support. (ECF No. 23 ¶ 13). Morton has an A.A.S. in both Computer Programming and Computer Information Services and has completed seventy-two hours towards a B.S. in Information Systems. (ECF No. 23 ¶ 9). On July 1, 2019, Morton's pay was $58,404 per year. (ECF No. 26-1 ¶ 4.h).

In 2020, as COVID-19 began to be prevalent in the U.S., Defendant took certain steps to reduce its budget due to the financial impact of the pandemic and a forecasted decrease in the enrollment rate. (ECF No. 23 ¶ 16). Defendant alleges that Blake Butler—Defendant's Chief Information Officer—decided not to renew Plaintiff's employment contract, which was set to expire on June 30, 2020, because Defendant needed to reduce the budget of the IT department. (ECF No. 23 ¶ 18). Defendant contends that Plaintiff was terminated because she had the least seniority among the department's three project/program managers, and her duties could be absorbed by the other two project/program managers. (ECF No. 23 ¶¶ 19, 20). Plaintiff's duties have since been absorbed by other employees in the IT department, and no one has been hired to replace her or to perform her duties. (ECF No. 23 ¶ 21).

In a letter to the EEOC in Response to Plaintiff's Charge of Discrimination, Defendant stated that it "determined that the duties performed by [Plaintiff], the employee with the least seniority, could be absorbed by other employees in the department" because of budget cutbacks. (ECF No. 24-4 at 3). On October 30, 2020, Plaintiff filed a claim for Unemployment Insurance Benefits with the Arkansas Department of Workforce Services. An "Internet Notice to Last Employer" was sent to Defendant for it to file a response. (ECF No. 24-4 at 1). In response to the question "Why was this claimant separated from employment", Defendant checked the box for "General" under the "Discharged" category. *Id.* Defendant

3

did not check any box under the "Laid Off" category. Defendant has stated that it did not check a box under the "Laid Off" category because it is typically reserved for when there is an expectation that the employee will return to work. (ECF No. 26-1 ¶ 6). Plaintiff alleges that she was terminated because, prior to her termination, she had raised concerns to Brewer and Butler about the alleged different treatment of females and males in the IT Department. (Covey Dep. 110:11–22, ECF No. 24-1 at 110).

## II.   Standard of Review

The standard for summary judgment is well established. A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a). When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

When deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III.   Discussion

Defendant argues that it is entitled to summary judgment on Plaintiff's EPA claim and discrimination and retaliation claims brought pursuant to Title VII and the ACRA.[3]

### A. EPA

The EPA prohibits pay discrimination on the basis of sex. 29 U.S.C. § 206(d). "A plaintiff must first establish a *prima facie* case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions." *Proce v. Northern States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citing *Hutchins v. Int'l Bhd. of Teamsters,* 177 F.3d 1076, 1080 (8th Cir.1999)). If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to prove that any wage differential is explained by "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). In an EPA case, "a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action . . . [it] must prove that the pay differential was based on a factor other than sex." *Taylor v. White,* 321 F.3d 710, 716 (8th Cir. 2003).

Here, Plaintiff has established a *prima facie* case of pay discrimination under the EPA. It is undisputed that Plaintiff was paid less while performing her work under similar conditions as her male coworkers, Carroll and Morton. The parties dispute whether Plaintiff's work required equal skill, effort and responsibility compared to the work of Carroll and Morton. However, Plaintiff, Carroll and Morton each held a position within the same broader classification. Further, Plaintiff left a comment on the QPIII Form stating:

> My position has changed significantly since my hire date due to reorganization and resignations within the department and I now find myself with responsibilities comparable to my two counterparts [Carroll and Morton] who support the ERP. Given the above-mentioned changes, I respectfully request a QPIII adjustment to adjust my salary to a more appropriate level.

---

[3] Title VII and the ACRA are governed by the same standards. *See Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 926 (8th Cir. 2007).

5

(ECF No. 24-2 at 3). This form was signed by Butler and approved by human resources, and Plaintiff ultimately received a reclassification and a raise. Prior to Plaintiff's termination, Defendant would agree that Plaintiff's work required equal skill, effort and responsibility compared to the work of her male coworkers.[4] Therefore, Plaintiff has established a *prima facie* case of pay discrimination under the EPA.

Defendant argues that the difference in salaries is because Carroll and Morton have worked for Defendant longer than Plaintiff. This argument is persuasive. In *Hutchins,* an employer established an affirmative defense to an EPA claim by showing salary increases were based on length of service. 177 F.3d at 1082 (citing *Riordan v. Kempiners,* 831 F.2d 690, 699–700 (7th Cir. 1987)). Carroll worked for Defendant five years longer than Plaintiff, and Morton worked for eight years longer. As a result, both were paid more than Plaintiff for their work. Defendant has shown that Carroll and Morton's time working for Defendant, prior to Plaintiff's employment, allowed them to receive additional merit pay increases and cost-of-living adjustments. (ECF No. 26-1 ¶¶ 4, 5). Therefore, Defendant did not violate the EPA by paying Carroll and Morton more than Plaintiff.

**B.    Title VII Discrimination**

Title VII dictates that "it is 'unlawful . . . for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Bostock v. Clayton Cnty.*, 140 S.Ct. 1731, 1738 (2020) (alteration in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). Because Plaintiff relies on indirect evidence of discrimination to establish her *prima facie* case, the Court applies the *McDonnell Douglas*[5] framework. *See Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017). To establish a *prima facie* case of gender discrimination, the plaintiff-employee must show that she was a member of a protected class, she was qualified to perform the job, she experienced an adverse employment action, and that she received treatment that was different from that of

---

[4] Defendant's response only attempts to distinguish Plaintiff's "duties" from those of Carroll and Morton.

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

6

similarly situated males.  *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005).  To establish the fourth element of a *prima facie* discrimination case, the employee can also provide "some other evidence that would give rise to an inference of unlawful discrimination."  *Putman v. Unity Health Sys.,* 348 F.3d 732, 736 (8th Cir. 2003).  If the employee sets forth a *prima facie* discrimination case, then the burden shifts to the defendant-employer to "provide a 'legitimate, non-discriminatory justification for its adverse employment action.'"  *Bunch*, 863 F.3d at 1068 (citation omitted).  If the employer proffers a legitimate justification, then it becomes the employee's burden to demonstrate that the employer's proffered justification is merely pretext.  *Id.*

Defendant does not challenge that Plaintiff was a member of a protect class, that she was qualified to perform the job, and that she experienced an adverse employment action.  (ECF No. 22 at 9–10). However, Defendant argues that Plaintiff cannot present evidence that would give rise to an inference of unlawful discrimination.  Specifically, Defendant argues that Plaintiff was not similarly situated to Carroll and Morton, and, therefore, she cannot argue that they received favorable treatment.

"Evidence of pretext, normally considered at step three of the *McDonnell Douglas* analysis, can satisfy the inference-of-discrimination element of the *prima facie* case."  *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010).  "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision."  *Id.*

As noted in the Court's discussion of Plaintiff's EPA claim, Plaintiff was doing equal work requiring equal skill, effort, and responsibility and performed under similar working conditions to that of Carroll and Morton.  *See* discussion *supra* Part III.A.  It is noteworthy that Plaintiff had not worked for Defendant as long as Carroll and Morton.  However, this does not matter for this portion of the Court's discussion.  Defendant terminated Plaintiff instead of either of her male coworkers.  Therefore, Plaintiff has presented evidence that would give rise to an inference of unlawful discrimination.

Defendant cites to *Chappell*[6] to support its argument that Plaintiff had to be similarly situated to Carroll and Morton in "all relevant respects", and the fact that she was not as tenured as them prevents her from proving all three of them were similarly situated. Defendant's reliance on *Chappell* is misplaced primarily because this opinion stated that "the relevant respects are the conduct of the employees and any disparity in their discipline." *Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012). This case is distinguishable from *Chappell* because Plaintiff does not allege that she was disciplined for the same conduct that went unpunished when committed by a male coworker.

Plaintiff also argues that Defendant failed to follow its policy on contract nonrenewal. *Lake*, 596 F.3d at 874. However, the record is devoid of any evidence of this policy. Therefore, the Court cannot find that Plaintiff has proven a *prima facie* case of discrimination for this reason. In addition, Plaintiff argues that Defendant has shifted its explanation for the termination decision three times. *Id.* The Court disagrees. Beyond checking a box—on a form in response to Plaintiff's claim for unemployment benefits—that stated Plaintiff was "Discharged" for "General" reasons, Plaintiff has not shown that Defendant has stated any other reason for her termination other than its explanation that she was terminated because of budget cuts. (ECF No. 24-4 at 1).

Since Plaintiff has established a *prima facie* case of discrimination by presenting evidence that would give rise to an inference of unlawful discrimination, Defendant's stated reason for Plaintiff's termination must be more carefully examined. Defendant now has the burden to "provide a 'legitimate, non-discriminatory justification for its adverse employment action.'" *Bunch*, 863 F.3d at 1068 (citation omitted). "This is a light burden, as it is 'one of production, not persuasion; it can involve no credibility assessment.'" *Holston v. Cty. of Hope, Ark.,* 4:17-cv-04005, 2020 WL 60246, at *6 (W.D. Ark. Jan. 6, 2020) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Defendant was required to make budget cuts as a result of the COVID-19 pandemic. Specifically, Defendant had to make budget cuts in Plaintiff's department. At that time, Plaintiff had the lowest seniority in her department. As

---

[6] *Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012).

a result, Defendant chose to terminate her from her position instead of Carroll and Morton, and Plaintiff's job duties were then taken over by Carroll and Morton. Therefore, Defendant has met its burden by providing a legitimate non-discriminatory justification for its adverse employment action.

The burden now shifts to Plaintiff to prove that the Defendant's justification is merely pretext. *Bunch*, 863 F.3d at 1068 (citation omitted). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake*, 596 F.3d at 874. A plaintiff can demonstrate a material question of fact as to pretext by either showing the proffered explanation has no basis in fact or by persuading the Court that it is more likely that a prohibited reason motivated the employer. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012) (quoting *Wallace v. DTG Operations, Inc.,* 442 F.3d 1112, 1120 (8th Cir. 2006)).

Here, Plaintiff argues that Defendant's proffered explanation has no basis in fact. Specifically, Plaintiff only realleges that Defendant gave three different reasons for Plaintiff's termination.[7] As previously stated, beyond checking a box—on a form in response to Plaintiff's claim for unemployment benefits—that stated Plaintiff was "Discharged" for "General" reasons, Plaintiff has not shown that Defendant has stated any other reason for her termination other than its explanation that she was terminated because of budget cuts. (ECF No. 24-4 at 1). The record is devoid of any evidence that indicates that Defendant terminated Plaintiff for any reason other than the budget cut. Therefore, Plaintiff has not established pretext, and Defendant did not commit discrimination in violation of Title VII.

    C.    **Title VII Retaliation**

After reviewing Plaintiff's complaint (ECF No. 2) and response (ECF No. 25), it is not clear whether Plaintiff is bringing a claim for retaliation under Title VII. However, the Court will address this claim.

---

[7] Plaintiff's response (ECF No. 25 at 14–16) does not further develop the argument that Defendant treated similarly-situated employees in a disparate manner beyond the showing necessary to establish a *prima facie* case for discrimination. *Lake*, 596 F.3d at 874.

In addition to Title VII's protection against discrimination on the basis of "race, color, religion, sex, or national origin," *see Bostock*, 140 S. Ct. at 1738, "[a] separate section of the [Civil Rights] Act—its antiretaliation provision—prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (second alteration in original) (citing 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation, an employee-plaintiff must show that "(1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct." *See Bunch*, 863 F.3d at 1069 (citation omitted). As with her gender discrimination claim, Plaintiff relies on indirect evidence to establish a *prima facie* case of retaliation, so the Court must use the *McDonnell Douglas* burden-shifting standard. *See Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). If the employee establishes a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (citation omitted). If the employer satisfies its burden, then "the burden then shifts back to the employee to put forth evidence of pretext." *Id.*

Defendant does not argue that Plaintiff suffered a materially adverse employment action. Instead, Defendant argues that Plaintiff did not engage in protected conduct and the adverse act was not causally linked to the allegedly protected conduct. Because this issue is not addressed by Plaintiff's response (ECF No. 25), the Court will assume *arguendo* that Plaintiff has established a *prima facie* case of retaliation. For the reasons stated earlier, Defendant has met its burden by providing a legitimate non-discriminatory justification for its adverse employment action, and Plaintiff has not put forth evidence of pretext. *See* discussion *supra* Part III.B. Accordingly, Defendant did not retaliate against Plaintiff in violation of Title VII.

**IV.    Conclusion**

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 21) should be and hereby is **GRANTED**. A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED** this 31st day of May 2022.

*/s/Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**